IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| DERRICK W.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 5:20-cv-00055 |
| v. | ) | |
| | ) | REPORT & RECOMMENDATION |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | By:   Joel C. Hoppe |
|     Defendant.[2] | ) |         United States Magistrate Judge |

Plaintiff Derrick W. asks this Court to review the Commissioner of Social Security's final decisions denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. ECF No. 2. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' arguments, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits, and the decision should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other

2

work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In June 2018, Derrick filed for DIB alleging that he was disabled by chronic pain, cervical stenosis, and degenerative disc disease. *See* Administrative Record ("R.") 265–66, 295. Derrick alleged that he stopped working "because of [his] condition(s)" on November 1, 2016, R. 295, but he later amended his alleged onset date ("AOD") to January 27, 2018, R. 46; *see also* R. 27. He was forty-three years old, or a "younger person" under the regulations, on his amended AOD. R. 136; 20 C.F.R. § 404.1563(c). Disability Determination Services ("DDS"), the state agency, denied Derrick's claim initially in August 2018, R. 134–46, and upon reconsideration that November, R. 147–62. In August 2019, Derrick appeared with counsel and testified at a hearing before ALJ H. Munday. R. 42–65. A vocational expert ("VE") also testified. R. 60–64.

ALJ Munday issued an unfavorable decision on September 18, 2019. R. 24–35. She found that Derrick's degenerative disc disease ("DDD") of the cervical and lumbar spine and degenerative joint disease ("DJD") of the left shoulder were "severe" medically determinable impairments ("MDI") during the relevant time, R. 26, but they did not meet or medically equal the relevant Listings, R. 27–28 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 1.04). ALJ Munday noted as part of the latter analysis that the DDS physicians who reviewed Derrick's medical records in August 2018 and November 2018, respectively, opined that his severe DDD

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

did not satisfy Listing 1.04, *see* R. 27 (citing R. 140–43, 156–58), and she found that Derrick's medical records submitted to the agency "since DDS completed its review d[id] not warrant a different" conclusion, R. 27–28 (citing R. 521, 540, 608, 701, 725, 743, 786, 818, 822, 840, 865, 971, 996, 1009, 1014, 1024–25).

ALJ Munday then evaluated Derrick's residual functional capacity ("RFC") based on all the evidence in the record. *See* R. 28–33. She found that, during the period between January 27, 2018, and January 23, 2019, Derrick could have performed "light" work[4] except:

> standing/walking 4 hours in an 8-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders/ropes/scaffolds; no reaching overhead with the left upper extremity; frequently handle and finger; occasional pushing/pulling with bilateral upper and lower extremities; occasional exposure to vibrations; and occasional exposure to hazardous conditions, including unprotected heights and machinery.

R. 28. As of January 24, 2019, Derrick's exertional RFC dropped to "sedentary" work[5] "except standing/walking 4 hours in an 8-hour workday" and "us[ing] a cane for ambulation." R. 30. He had the same limitations on postural activities, pushing/pulling, overhead reaching, fine/gross manipulation, and exposure to certain workplace conditions. *See id.* ALJ Munday explained that she reduced Derrick's exertional capacities from a limited range of "light"[6] work, *see* R. 28, 34,

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Someone who "can do light work . . . can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Aside from the amounts of weight lifted and carried, "[t]he major difference between sedentary and light work is that most light jobs" require standing or walking for "most of the workday." SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983). Light work typically requires six hours of standing and/or walking during an eight-hour day, SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983), while sedentary work only requires about two hours, *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010).

[6] An RFC that allows the claimant to lift up to twenty pounds at one time, but restricts total standing and walking to fewer than six hours during an eight-hour day is often characterized as permitting a "reduced" or "limited" range of light work because the person's capacities for standing/walking fall between what is needed to do "sedentary" work and what is needed to perform the "full range of light work." *See Moore v.*

62, to "sedentary" work because Derrick "was prescribed a cane on January 24, 2019," R. 30 (citing R. 655), and "based on the addition of a cane, the VE opined sedentary work exists," *id.* (citing R. 63) ("[I]f a person used a cane for ambulation that pretty much precludes light work and reduces [the RFC] to sedentary, whereas [] a cane just for ambulation would not preclude sedentary work in my opinion.")).

Derrick's exertional limitations ruled out his past jobs as a poultry worker and warehouse worker. *See* R. 33–34 (citing R. 60–61). Based on the VE's testimony, however, ALJ Munday found that Derrick still could perform certain "light" and "sedentary" unskilled occupations (e.g., mail routing clerk, final assembler, surveillance monitor) that offered a significant number of jobs in the national economy. R. 34 (citing R. 61–62); R. 35 (citing R. 63). Thus, Derrick was not disabled from January 27, 2018, through September 18, 2019. R. 36. The Appeals Council declined to review the ALJ's decision in June 2020, R. 1–5, and this appeal followed.

III. Discussion

Derrick's sole argument on appeal is that substantial evidence does not support ALJ Munday's RFC determination "because she relied on the stale opinions of the [DDS] consultants and instead crafted the RFC out of whole cloth." Pl.'s Br. 1, 11, ECF No. 16. In August 2018, DDS consultant Thomas Phillips, M.D., opined that Derrick was "limited in his ability to stand/walk throughout a workday and . . . in his non-exertional functioning due to pain, numbness, and radicular symptoms," R. 140, related to cervical stenosis and DDD of the lumbar

---

*Comm'r of Soc. Sec. Admin.*, No. 5:16cv184, 2018 WL 993879, at *3 (N.D. W. Va. Feb. 21, 2018) ("[T]he ALJ appropriately found the plaintiff to be capable of performing a 'limited range' of light work, limited specifically in that she could stand and walk for no more than four hours."); *Neal*, 2010 WL 1759582, at *2 (explaining that a four-hour standing/walking restriction "exceed[s] the definition of sedentary work" because it permits the claimant to "stand or walk for more than two hours per workday," but "fall[s] short of the full range of light work because [the claimant] cannot stand or walk for six hours per workday").

5

spine status-post fusion, R. 142. More specifically, Derrick could lift/carry ten pounds frequently and ten pounds occasionally; stand and/or walk for two hours, and sit for about six hours, during an eight-hour day; occasionally push/pull with the upper or lower extremities; and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. R. 142–43. Dr. Thomas did not identify any impairment-related manipulative or environmental limitations. *See id.* That November, David Bristow, M.D., noted that Dr. Thomas's assessment was "consistent and supported by medical evidence on file" in August 2018. R. 159. Having reviewed Derrick's updated records, however, Dr. Bristow concluded that he could lift/carry ten pounds frequently and twenty pounds occasionally; stand and/or walk for four hours, and sit for about six hours, during an eight-hour day; and occasionally climb ladders, ropes, and scaffolds. R. 159–60; *see* R. 155 ("[C]apable of a limited light RFC with occasional postural due to contd pain."). Dr. Bristow explained that a recent physical exam showed Derrick had "normal gait, strength, tone, sensation and reflexes" even though he "continues to struggle with pain in his neck and lower back." R. 159; *see* R. 155 (citing R. 608). Derrick's most recent CT scan showed "mild" to "severe" degenerative changes in his cervical and lumbar spine with intact hardware from the prior fusion. R. 155 (citing R. 543 (Sept. 2018)); *see* R. 159–60. ALJ Munday incorporated aspects of both opinions into her RFC assessments, R. 28, 30, 32–33, but further restricted Derrick to "frequent" fine and gross manipulation bilaterally, "occasional" exposure to vibrations or workplace hazards, and "no reaching overhead with the left upper extremity," R. 28, 30. She also added "a cane for ambulation" after January 24, 2019. R. 30.

Derrick argues that ALJ Munday should not have found the DDS medical opinions "persuasive" because they were based on an "incomplete record"—i.e., the record as it existed on November 6, 2018—and the physicians did not have "extensive medical evidence" showing a

6

"profound change in [his] condition" after that date. Pl.'s Br. 11–12. He points to various MRIs and X-rays taken in 2019 showing "mild" to "severe" degenerative changes in his cervical and lumbar spine, *id.* at 12–14 (citing R. 766 (Feb. 8); R. 787 (Jan. 21); R. 996 (June 20); R. 1025 (Aug. 12)), as well as select abnormalities on two physical exams, *id.* at 12–13 (citing R. 786–87 (Jan. 21); R. 1009 (July 17)). He asserts that this evidence "would more than likely alter" the DDS opinions. *Id.* at 13 ("This probative evidence shows a deterioration in Plaintiff's condition since the [DDS] review."). *But see* R. 155 (Dr. Bristow summarizing mixed findings as to Derrick's gait, range of motion, strength, sensation, and pain responses on exams through October 2018); R. 787 (X-ray showing "no acute hardware complication" at L5-S1); R. 1024 ("There [has] been laminectomy and fusion at L5-S1, these changes are stable since 2016."). Thus, ALJ Munday could not rely on those "stale" opinions to support her RFC findings. *See* Pl.'s Br. 11–13. Derrick also argues that ALJ Munday should have asked a medical expert to interpret the more recent images and that her failure to do so resulted in an RFC finding that was "craft[ed] out of whole cloth" and "failed to properly account for" Derrick's allegation that he cannot do even "sedentary" work. *Id.* at 15–16 ("[He] testified that he can sit for twenty minutes before the pain becomes too much. He also testified that he can walk seven yards before he must stop due to pain." (citing R. 51)). *But see id.* ("Without an updated medical opinion, it is impossible to know the full extent of Plaintiff's limitations.").

Notably, Derrick does not identify which part(s) of the DDS opinions "more than likely" would change in his favor—let alone entitle him to disability benefits—if a medical expert reviewed his MRIs and X-rays from 2019. *Cf. Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("Reid has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim. As such, we

7

conclude that the Commissioner's decision was based on the entire record and supported by substantial evidence."). Presumably, Derrick believes an expert would opine that these images showing "mild" to "severe" degenerative changes in the cervical and lumbar spine bolstered Derrick's allegations that his "lower back and neck pain," Pl.'s Br. 13, was so intense or persistent that he could not "sit for up to 6 hours and stand/walk up to 2 hours" in an eight-hour workday, *id.* at 16. *See generally id.* at 12–16; R. 140, 142 (Dr. Thomas's opinion that Derrick's cervical stenosis and lumbar DDD status-post fusion with "history of back, neck, and joint pain" restricted him to sitting for about 6 hours, and standing/walking for 2 hours, in an 8-hour day); R. 158–59 (Dr. Bristow's opinion that Derrick's cervical stenosis and lumbar DDD status-post fusion with continued "pain in his neck and lower back" restricted him to sitting for about 6 hours, and standing/walking for 4 hours, in an 8-hour day). His arguments are not persuasive. *See, e.g.*, R. 155 (Dr. Bristow noting that CT scan taken in September 2018 showed "mild" to "severe" degenerative changes in the cervical and lumbar spine with intact fusion at L5-S1).

\*

A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at \*2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at \*3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 17, 179 (4th Cir. 2016). *See* SSR 96-8p, 1996 WL 374184, at \*1, \*5

8

(explaining that an ALJ determining the claimant's exertional RFC must identify the claimant's impairment-related "functional limitations or restrictions" and evaluate his or her "work-related abilities on a function-by-function basis," e.g., sitting, standing/walking, lifting/carrying, before the ALJ can express the RFC "in terms of the exertional levels of work, [i.e.,] sedentary, light, medium, heavy, and very heavy"). The RFC should reflect credibly established "restrictions caused by medical impairments and their related symptoms" that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis, SSR 96-8p, 1996 WL 374184, at *1, *2. Second, the ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how he or she weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he or she considered all relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision built an "accurate and logical bridge from that evidence to his [or her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas*, 916 F.3d at 311–12.

      ALJ Munday's decision satisfies this "deferential standard of review," *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2015). To start, she recognized that Drs. Thomas and Bristow did not have all relevant medical evidence when they issued their opinions in August 2018 and November 2018, respectively, and she specifically cited the fact that they did not know Derrick was prescribed a "cane for all ambulation after January 24, 2019." R. 33 (citing R. 655). Before evaluating those opinions, ALJ Munday summarized relevant treatment records and diagnostic results dated from May 2018 through August 2019, including each exhibit that Derrick cites in

9

his brief. *See generally* R. 27–31 (citing R. 482–87, 521, 539–40, 543, 608, 655, 701, 724–26, 743–45, 760, 765–67, 778–88, 818–23, 838–42, 865–68, 971, 996, 1009, 1014, 1024–25). She found that the DDS physicians' functional assessments were "persuasive" because they were "consistent with and supported by the medical evidence" in the longitudinal record, "especially" regarding Derrick's ability to sit for six hours, R. 32–33 (citing R. 142, 159); stand/walk for four hours and lift/carry up to twenty pounds, R. 33 (citing R. 158–59); and occasionally engage in most postural activities during an eight-hour day, R. 32–33 (citing R. 142–43, 159). She further restricted Derrick's manipulative capacities and exposure to certain workplace conditions based on MRI and X-ray results, mixed findings on physical exams, Derrick's testimony, and the longitudinal medical record, R. 33. *See* R. 31–33.

ALJ Munday also found that the "mild" to "severe" abnormalities on the MRIs and X-rays taken in 2019 would not have changed the DDS physicians' opinions that Derrick's severe DDD of the cervical/lumbar spine did not satisfy Listing 1.04, R. 27–28 (citing R. 140, 156–57, 996, 1024–25), in part because contemporaneous physical exams still showed "intact sensation, full strength, and the ability to effectively ambulate," R. 28 (citing R. 521, 540, 608, 701, 725, 743, 786, 822, 840, 865, 971, 1009, 1014). ALJ Munday cited these and other relevant findings on Derrick's physical exams throughout the relevant period both in rejecting his testimony that he "can sit for 20 minutes depending on the pain" and "can walk about 5 to 7 yards" because of neck/back pain, R. 29 (citing R. 50–51), and in concluding that he could sit for about six hours and stand/walk for four hours during an eight-hour workday despite his credibly established complaints of neck and back pain, *see* R. 31–33 (citing R. 521, 701, 725, 743–44, 786, 840, 865, 971, 1009, 1024–25). Her summary of the MRI and X-ray results closely tracks the "Impression" section in each exhibit, *see* R. 28, 30–31 (citing R. 786–87, 996, 1024–25), making clear that

10

"the ALJ relied on the physician's interpretation of the data" and did not take "it upon [her]self to interpret raw medical data" or "play doctor" by substituting her lay opinion for the physicians' impressions, *Harvey v. Comm'r of Soc. Sec. Admin.*, No. 9:20cv135, 2021 WL 3410758, at *6 (D.S.C. May 18, 2021) ("ALJ did not interpret raw medical data" by reciting findings "almost verbatim from the 'medical impressions' sections of the MRIs").

Derrick does not challenge any of ALJ Munday's findings or conclusions on these points. *See generally* Pl.'s Br. 11–16. Instead, his sole argument is that Dr. Bristow's opinion was too "stale" to inform a proper RFC assessment. *See* Pl.'s Br. 12 (citing R. 153). Because the RFC is an administrative finding made by the ALJ alone, ALJ Munday was not required to adopt any medical opinion, or part of an opinion, in determining Derrick's RFC. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011); *Funk v. Kijakazi*, No. 2:20cv38, 2022 WL 205478, at *6 (W.D. Va. Jan. 24, 2022) (citing 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c) (2020)). "The relevant question is whether the ALJ's [RFC] assessment is based upon all the relevant evidence, including medical records, medical source opinions[,] and the claimant's subjective allegations and description of his own limitations," *Funk*, 2022 WL 205478, at *6 (citing 20 C.F.R. § 404.1545); *see Felton-Miller*, 459 F. App'x at 230–31. Additionally, "because state agency review precedes ALJ review, there is always some time lapse between the [DDS] consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a [DDS] report and the ALJ's decision in reliance on it." *Funk*, 2022 WL 205478, at *6 (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). Thus, mere passages of "time between State agency physician opinions and the ALJ's decision does not render the opinion[s] stale." *Stricker v. Colvin*, No. 2:15cv15, 2016 WL 543216, at *3 (N.D. W. Va. Feb. 10, 2016).

The regulations also contemplate that a claimant may produce additional medical evidence between the last DDS report and the ALJ's hearing decision and that the ALJ will review all the available evidence in determining whether the claimant is disabled. *See* SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996); 20 C.F.R. § 404.1520c(a). The ALJ is not required to get an updated medical opinion about the claimant's RFC simply because the record contains new or additional clinical findings, including diagnostic imaging or laboratory results, that will inform the ALJ's RFC assessment. *See* SSR 96-6p, 1996 WL 374180, at *4 (directing ALJs to "call on a medical expert" only when "additional medical evidence is received" at the hearing level that "in the opinion of the [ALJ] . . . may change" the DDS medical consultant's "finding that the impairment(s) is not equivalent in severity" to any Listed impairment). Rather, as long as the ALJ does "not *substitute* his [or her] own lay opinion for a medical expert's [opinion] when evaluating the significance of clinical findings," *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020) (emphasis added), the ALJ is free to craft an RFC based on all the relevant evidence in the record, *Felton-Miller*, 459 F. App'x at 230–31. *Compare Arakas*, 983 F.3d at 108–09 ("Because the ALJ lacked the medical expertise to interpret a cervical MRI, he erred in discounting" physician's opinion that claimant's "'cervical MRI showed clear evidence of chronic cervical spasm'" and "improperly substituted his own opinion" that "'an MRI would not document a chronic condition of spasm'"), *and Farrar v. Astrue*, No. 3:11cv457, 2012 WL 3113159, at *10–12 (E.D. Va. July 13, 2012) (substantial evidence did not support RFC for light work where ALJ "substitute[d] his own views for uncontroverted medical opinion[s]" that claimant was limited to sedentary work because "[w]here 'no medical opinion' supports the [ALJ's] RFC determination, as a 'lay person' he is 'simply not qualified to interpret raw medical data in functional terms'" (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)), *with*

12

*Felton-Miller*, 459 F. App'x at 231 ("The ALJ was not required to obtain an expert medical opinion as to Felton-Miller's RFC. The ALJ properly based his RFC finding on [her] subjective complaints, the objective medical evidence, and the opinions of treating, examining, and nonexamining physicians."), *Harvey*, 2021 WL 3410758, at *6 ("The ALJ relied on the physician's interpretations of the [clinical] data, and then used those interpretations in formulating Harvey's RFC—precisely what the regulations contemplate."), *and Herschel G. v. Saul*, No. 7:18cv266, 2019 WL 4345477, at *3–4 (W.D. Va. Sept. 12, 2019) (Dillon, J.) (rejecting argument that "the ALJ based her RFC decision on raw data" where the ALJ "pointed to specific medical evidence from treatment notes detailing Herschel's medical issues and treatment," including Herschel's subjective statements, clinical observations, and "opinion and notes from [her] treating physicians," and relied on "raw data" only to the extent that she made "commonsense judgments" about Hershel's impairment-related limitations).

  Here, there was a ten-month gap between the time Dr. Bristow gave his RFC assessment in November 2018 and the time ALJ Munday issued her hearing decision in September 2019. ALJ Munday acknowledged that Derrick submitted additional MRIs and X-rays from 2019 and she explained why this evidence would not change the DDS medical consultants' prior findings that Derrick's multilevel DDD was "not equivalent in severity," SSR 96-6p, 1996 WL 374180, at *4, to Listing 1.04. She then relied on all the relevant evidence in the record—including parts of both DDS opinions, physicians' impressions of diagnostic images, relevant findings on physical exams, and Derrick's subjective statements—in crafting Derrick's RFC. This is "precisely what the regulations contemplate." *Harvey*, 2021 WL 3410758, at *6; *see Felton-Miller*, 459 F. App'x at 230–31. Accordingly, I find that substantial evidence supports the Commissioner's denial of benefits. *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("There were a number

13

of conflicts in the evidence here, and we do not second guess the ALJ in resolving those conflicts. In our view, the justification provided by the ALJ—albeit somewhat sparse—was sufficient to allow us to determine that the ALJ performed an adequate review of the whole record and that the decision is supported by substantial evidence.").

\*\*

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** the Commissioner's motion for summary judgment, ECF No. 21, **AFFIRM** the Commissioner's final decision, and **DISMISS** the case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: February 17, 2022

*Joel C. Hoppe*
Joel C. Hoppe
United States Magistrate Judge